**Joseph Szimkus, Appellee, v. Stephen Ragauckas et al., Appellants.**

**Gen. No. 19,858.     (Not to be reported in full.)**

Appeal from the Circuit Court of Cook county; the Hon. HARRY C. MORAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed on remittitur. Opinion filed November 10, 1914.

## Statement of the Case.

Action by Joseph Szimkus against Stephen Ragauckas, Joseph Gestaukos, Anton J. Bierzynski, Francis Bierzynski and others who are dismissed from the case. All were members of a musical and dramatic organization called the "Lithuanian Youths' Circle." At one of its entertainments, appellee was on a committee that had charge of collecting the proceeds therefrom. At a later entertainment, he had charge of the wardrobe and collected the proceeds from the same. From the latter fund he retained the sum of $4.70, claiming that he overpaid the society that much from the proceeds of the first entertainment. A controversy and dispute over his right to the sum so retained having arisen in the society, it passed a resolution demanding it from him and threatening to publish his conduct in the newspapers if he did not pay it. In pursuance thereof an article, the original of which was signed by appellants, was published on May 5, 1911, in a Lithuanian paper and language, the translation of which is as follows:

"On the 29th of January of this year this Society played the play 'Valkata.' J. Szimkus, a member of this Society, was appointed in wardrobe, who charged 10 cents to each person for their clothing they left, but he kept the money, $4.70, himself. At first monthly meeting, after the play, he was asked for an explanation. J. Szimkus just told this much that he

got the $4.70, but that he will not give it back.    Violent uproar; J. Szimkus was asked if he cannot show for what reason he kept the money, and if he cannot show the reason he ought to return it to the Society Treasurer; but instead of that he said he would not belong to Society and went out.    We will mention that this was not the first time that this happened with J. Szimkus.    While he was organizing the Committee of this play, he used to give us an account in two or three months, but his account never used to agree with the sum of money which he used to turn in to Society, and he used to tell that he made mistakes in his account, or that he lost the money from his pocket. · As he was of the same nationality, and a member of this Society, Society used to forgive him for a few dollars. The way he acted is very unfortunate.    This Society is forced to let the public know about him.''

The suit was commenced by filing a *praecipe* October 16, 1911, and issuance of summons on the same day. The declaration was filed September 18, 1912, consisting of one count, alleging in due form that by said article therein set forth it was intended to charge that plaintiff had ''feloniously stolen and carried away certain moneys of said society,'' and claiming special damages to his reputation, credit and business.

Pursuant to an order entered October 8, 1912, an *alias* summons was issued and served on three of the defendants.    All of them afterwards entered a general appearance and filed general and special demurrers, which were    overruled, whereupon    defendants filed pleas of not guilty, justification and the statute of limitations.    A demurrer to the plea of statute of limitations was sustained.    The verdict in favor of plaintiff was for fifteen hundred dollars, and there being a remittitur of three hundred dollars, judgment was entered for twelve hundred dollars.    To reverse the judgment, defendants appeal.

CYRUS J. WOOD and WILLIAM G. WOOD, for appellants.

SAMUEL J. ANDALMAN, for appellee; JACOB COHEN, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

## Abstract of the Decision.

1. APPEARANCE, § 17*—*effect as waiving defects in process.* Defendants, by entering their general appearance and defending on the merits, waive any objection to the summons or service.

2. LIMITATION OF ACTIONS, § 53*—*what constitutes commencement of action.* The filing of the *praecipe* and issuance of the summons constitute the commencement of a suit.

3. APPEARANCE, § 20*—*right to withdraw.* The court *held* not to have abused its discretion in refusing to allow withdrawal by defendants of their general appearance and entry of special appearance.

4. LIBEL AND SLANDER, § 3*—*when question whether article is libelous per se not involved.* The question whether an article is libelous *per se* is not involved in a case where the suit was not brought on that theory, but that the averments in the inuendo made it libelous and that special damages resulted from its publication.

5. LIBEL AND SLANDER, § 159*—*when case must be submitted to jury.* In an action for libel, a plea of justification alone requires submission of the case to the jury.

6. LIBEL AND SLANDER, § 21*—*when malice may be implied.* Where the words published were intended to impute to the plaintiff the crime of larceny, malice may be implied from the very use thereof, and the implication is not overcome merely by defendants' denial of malice or of certain expressions attributed to some of them by plaintiff indicating malice.

7. LIBEL AND SLANDER, § 56*—*when publication not privileged.* The fact defendants were officers of a society and carried into effect its resolution for the publication of an article concerning one of the members, *held* not to make the article a privileged communication, it appearing that their action in so doing was wholly apart from any duty they owed the society.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

8. LIBEL AND SLANDER, § 64*—*truth as a defense.* Truth of the words published constitutes a sufficient defense only when the publication is with good motives and for justifiable ends.

9. LIBEL AND SLANDER, § 134*—*evidence competent to prove meaning of words.* In an action for libel, evidence to show that a person after reading the article withdrew money from the custody of plaintiff, explaining his conduct by stating how he interpreted the article, *held* competent to show the sense in which such person understood it.

10. DAMAGES, § 175*—*when evidence of pecuniary condition of parties admissible.* In an action for libel, evidence is admissible to show the pecuniary circumstances of the defendants, if malice is shown.

11. LIBEL AND SLANDER, § 155*—*when verdict excessive.* In an action for libel, a verdict in favor of plaintiff for twelve hundred dollars, *held* excessive.